IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLARD PENDLETON,

    Plaintiff-Counterdefendant,

vs.

No. CIV 98-0091 PK/DJS

CENTRAL NEW MEXICO
CORRECTIONAL FACILITY,

    Defendant-Counterclaimant.

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of the Motion of Defendant "Central New Mexico Correctional Facility" ("CNMCF") for Sanctions Pursuant to Fed. R. Civ. P. 11(c) filed September 17, 1998 (doc. 23) and Plaintiff's motion for sanctions contained in his response brief, see Plaintiff's Response to Defendant's Motion for Sanctions filed October 5, 1998 (doc 30). The court, being fully advised in the premises, finds that neither motion is well taken and both should be denied.

## Background

At a settlement conference on August 21, 1997 before a magistrate judge, Plaintiff and Defendant agreed to settle Plaintiff's discrimination claims in

Pendleton v. Central New Mexico Correctional Facility, CIV 96-1472 JP/DJS (D.N.M.) ("prior action"). Plaintiff was to receive $80,000, and Defendant agreed to assist Plaintiff in finding state employment outside the New Mexico Department of Corrections. In addition, Plaintiff agreed to resign his employment with the Department effective November 1, 1997.

By letter dated August 28, 1997, the CNMCF Warden approved Plaintiff's request for leave without pay through November 1, 1997, and transmitted various forms and information to assist Plaintiff in obtaining other state employment. The CNMCF Warden also indicated that Plaintiff would be required to request and receive his permission before coming onto the facility grounds. This condition arising out of the settlement of the prior action is the genesis of the present unsuccessful action for retaliation. See Memorandum Opinion and Order filed August 18, 1998 (doc. 17) (granting summary judgment).

Defendant's counsel drafted the settlement documents in the prior action unaware of the CNMCF Warden's August 28, 1997 letter or Plaintiff's retaliation claim. As drafted, the effective date of the release was to be the date Plaintiff executed the document. On September 2, 1997, Plaintiff's counsel (Mr. Mozes) requested that the release be effective only through August 21, the date of the settlement conference. When questioned why, Plaintiff's counsel responded that such was his normal practice. Defendant contends that based on this representation, its counsel agreed to the request. Plaintiff's counsel discussed the

change in a September 2, 1997 letter indicating that "[w]e will release the 'State' up through the date of the Settlement Conference, August 21, 1997." See Defendant's Reply Memorandum in Support of Motion for Imposition of Sanctions Pursuant to Fed. R. Civ. P. 11(c) filed October 19, 1998, ex. 2 (doc. 31).

Meanwhile, on September 5, 1997, Plaintiff filed a charge of retaliation (based on the CNMCF Warden's August 28, 1997 letter) with the EEOC that was mailed to Defendant by the agency on September 11, 1998, and received by Defendant thereafter. According to Plaintiff's counsel, the EEOC charge was filed "prior to any agreement between the parties on the final language of the settlement Release," see Plaintiff's Response filed October 5, 1998, ex. 3 (Mozes aff.) (doc. 30), see also id. at 16, yet this is strongly undercut by the September 2, 1997 letter by Plaintiff's counsel discussing the changes including the release date, see Defendant's Reply filed October 19, 1998, ex. 2 (doc. 31).

By the time Defendant received notice of the EEOC charge, Defendant had already executed the settlement agreement and release (September 9, 1997), and forwarded the documents and settlement proceeds to Plaintiff and his counsel. See id. ex. 3, ¶ 2 at 1 & jurat at 3. Plaintiff executed the documents on September 11, 1997 and received the $80,000 settlement proceeds. On September 16, 1997, Defendant's counsel mailed the closing documents in the prior action to court. See CIV 96-1472 JP/DJS (transmittal letter lodged in correspondence

section of file).  On September 17, 1997, the stipulation of dismissal was filed.[1]
See id. (doc. 25).  On that same day, Defendant received Plaintiff's September
15, 1997 letter advising it of the new retaliation charge filed with the EEOC and
seeking an extension of the November 1, 1998 date Plaintiff was to transfer or
resign.  See Plaintiff's Response filed October 5, 1998, ex. 8 (doc. 30).
Defendant contends that on September 17, 1997, its representatives first learned
"that they had been duped."  Defendant's Reply filed October 19, 1998, at 3
(doc. 31).

Plaintiff seeks shelter in the statement that "[n]either Plaintiff nor his counsel knew whether the retaliation charge was in possession or not of Defendant prior to both the execution of the release papers and the filing of the dismissal papers."  Plaintiff's Response filed October 5, 1998 at 16 (doc. 30).  Ostensibly, whether Defendant or its counsel had notice of the retaliation charge arising out of the prior action, and whether they were familiar with the normal practice of Plaintiff's counsel was of no concern.

Plaintiff did not resign his position on November 1, 1998, and Defendant moved to enforce the settlement agreement.  A second conference was held before the magistrate judge.  According to Defendant, the magistrate judge

---

[1] The order of dismissal did not reserve jurisdiction in the district court to enforce the settlement agreement, nor did it incorporate the agreement's terms.  See CIV 96-1472 JP/DJS (doc. 26).

communicated his concern that the release had been executed and the settlement proceeds obtained while Plaintiff and his attorney were aware of the retaliation claim. Again, according to Defendant, the magistrate judge indicated to Plaintiff's attorney that if he viewed the CNMCF Warden's August 28, 1997 letter as retaliatory, Plaintiff should return the settlement proceeds and the matter should be set for trial. That same day, Plaintiff's counsel indicated that Plaintiff would resign.

Plaintiff resigned his position effective January 12, 1998 and filed this action on January 23, 1998. Defendant answered and filed various state law counterclaims. Prior to doing so, the parties dispute whether Defendant requested Plaintiff to dismiss the suit for lack of a factual basis. Thereafter, Plaintiff dismissed a state law claim with prejudice, and the court declined to exercise supplemental jurisdiction over the Defendant's counterclaims once the federal claim was resolved.

Plaintiff's counsel states:

> I have a regular and routine practice of negotiating limiting language in a settlement release where the employer has the power to control and influence the terms and conditions of my client's employment. My practice is to limit the language to the specific claims released through settlement and up to the date of the settlement conference, where applicable.

Plaintiff's Response filed October 5, 1998, ex. 3, ¶ 4 (Mozes aff.) (doc. 30). In support of this statement, Plaintiff's counsel has attached releases (one negotiated

before and one after the release in this case) where substantial monetary settlements were achieved, and yet he filed subsequent discrimination lawsuits.

Discussion

Defendant contends that sanctions in the form of attorney's fees and costs ($17,196.23 as of September 17, 1998) should be imposed due to (1) inadequate factual investigation prior to filing the complaint in this matter and (2) a material misrepresentation by Plaintiff's attorney as to why he sought the change in the effective date of the release in CIV 96-1472. See Fed. R. Civ. P. 11(b)(1) & (3). Plaintiff suggests "that it would be improper for this [c]ourt to consider matters exclusively related to the settlement agreement in CIV No. 96-1472, over which the [c]ourt no longer has subject matter jurisdiction," Plaintiff's Response filed October 5, 1998, at 14 (doc. 30), relying upon Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). See also Morris v. City of Hobart, 39 F.3d 1105 (10th Cir. 1994). There are two responses to this suggestion. First, an independent basis of federal jurisdiction exists, specifically Plaintiff's retaliation claim, that allows the court to consider not only this motion, but also Defendant's counterclaims had the court been so inclined.[2] See 28 U.S.C. § 1367(a); Board of

---

[2] Plaintiff's reading of Kokkonen is too broad–an independent basis of federal jurisdiction allows the court to consider matters it otherwise could not. See Kokkonen, 511 U.S. at 382. Plaintiff supplied that independent basis of
(continued...)

Trustees of Local 25 v. Madison Hotel, Inc., 97 F.3d 1479, 1484-85 (D.C. Cir. 1996). Second, the issue in Defendant's motion is not enforcement of the settlement agreement among the parties, but rather an attorney's course of conduct resulting in the filing of this lawsuit. It is well established that Rule 11 matters are collateral and the court has jurisdiction to consider them despite the entry of judgment and dismissal of an action, whatever the reason. See Willy v. Coastal Corp., 503 U.S. 131, 137-38 (1992); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990); Buster v. Greisen, 104 F.3d 1186, 1190 (9th Cir.), cert. denied, 118 S. Ct. 441 (1997).

    Plaintiff also contends that Defendant has not complied with the safe-harbor provision of Fed. R. Civ. P. 11(c)(1)(A) which requires that a motion for sanctions be served upon the opposing party in advance of filing. Only if the challenged item is not withdrawn or corrected within 21 days after service is the motion to be filed or presented to court. Like several other circuits, ours has indicated that compliance with the "safe harbor" provision of Rule 11 is mandatory. See AeroTech, Inc. v. Estes, 110 F.3d 1523, 1528-29 (10th Cir. 1997) (citing Elliott v. Tilton, 64 F.3d 213, 216 (5th Cir. 1995)); see also Ridder v. City of Springfield, 109 F.3d 288, 296 (6th Cir. 1997), cert. denied, 118 S. Ct. 687 (1998).

---

    [2](...continued)
jurisdiction.

Defendant failed to serve this motion in advance of filing it. Defendant's reference to Rule 11 in the ad damnum clause of its answer does not comply with the rule and save this motion. <u>See</u> Answer Filed on Behalf of Named Defendant "Central New Mexico Correctional Facility" and Counterclaim for Damages filed March 27, 1998, at 11 (doc. 3). "The rule provides that requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief . . . ." Fed. R. Civ. P. 11 advisory committee notes, 1993 Amendments.

Moreover, Defendant's sanction motion is untimely. A party may not wait until judgment is entered against the opposing party and then file its Rule 11 motion for sanctions. <u>See</u> <u>Barber v. Miller</u>, 146 F.3d 707, 710-11 (9th Cir. 1998); <u>Ridder</u>, 109 F.3d at 295-97. Rather, the motion ordinarily should be served after the offending pleading is filed: "a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." Fed. R. Civ. P. 11 advisory committee notes, 1993 Amendments.

Although Defendant is procedurally barred from obtaining sanctions under Rule 11, the court declines to award Plaintiff sanctions against Defendant as requested. To the extent that Plaintiff relies upon pleadings other than the instant motion for sanctions, Plaintiff has not demonstrated procedural compliance with the safe-harbor provision of Rule 11. Although Rule 11(c)(1)(A) provides that "[i]f warranted, the court may award to the party prevailing on the motion the

reasonable expenses and attorney's fees incurred in presenting or opposing the motion [for sanctions]" (emphasis added), the court does not believe that such fees are warranted, even in the face of Defendant's non-compliance with the safe-harbor provisions of Rule 11,[3] because of the sharp practices engaged in by the Plaintiff's counsel.

It is well established that a retaliation claim under 29 U.S.C. § 623(d) is possible subsequent to settlement in an employment discrimination case. See Corneveaux v. CUNA Mutual Ins. Group, 76 F.3d 1498, 1507 (10th Cir. 1996); see also Simon J. Nadel, Claims of Retaliation Gain Stature As Effective Employee Litigation Tool, 67 U.S.L.W. 2259 (Nov. 10, 1998). Although Plaintiff may have had a slim factual basis to file a retaliation claim, the conduct of Plaintiff's counsel deserves mention.

As we go through this life we learn, and sometimes the hard way, who we can trust to be candid and who we cannot. It is unfortunate that some attorneys apparently feel no obligation to their fellow attorneys, but then again, as the saying goes, "it's a short road that doesn't have a bend in it." The Rules of Professional Conduct and the case law suggest that, even in the context of finalizing a settlement agreement and release, a knowing failure to disclose a

---

[3] Defendant's counsel is presumed aware of the extant authority that completely undercuts his arguments justifying Defendant's non-compliance with the safe-harbor provision.

non-confidential, material and objective fact upon inquiry by opposing counsel is improper.  See 2 N.M. R. Ann. (1998), Rules of Professional Conduct, Preamble, A Lawyer's Responsibilities ("As negotiator, a lawyer seeks a result advantageous to the client but consistent with requirements of honest dealing with others."); id. § 16-401 ("In the course of representing a client a lawyer shall not knowingly [] make a false statement of material fact or law to a third person."); id. § 16-804(C); ABA/BNA Lawyers' Manual on Professional Conduct, § 71:201 ("An omission of material information that is intended to mislead a third person may constitute a 'false statement.'").  The court agrees with Defendant that the failure to disclose a fact may be a misrepresentation in certain circumstances.  See Restatement (Second) of Torts § 529 & cmt. a ("A statement containing a half-truth may be as misleading as a statement wholly false.") (1977); Nebraska State Bar Assn. v. Addison, 412 N.W.2d 855, 856 (Neb. 1987); Florida Bar v. Joy, 679 So. 2d 1165, 1167-68 (Fla. 1996).

What is particularly troubling in this case is that the second retaliation lawsuit arose directly and immediately out of efforts to settle the prior action.  Holding back information that if divulged might have led to a quick low-cost resolution of this action without resort to additional litigation is exactly the type of conduct that the public finds abhorrent and that contributes to the low esteem that the bar currently is trying to reverse.

Practicing law transcends gamesmanship and making a buck.  We should be

trying to make a difference. The profession is more than a business, and should remain so. As professionals we should, while trying to solve our clients' problems, make every effort to avoid needless litigation. The conduct employed in this case certainly was not calculated to achieve that end.

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that both the Motion of Defendant "Central New Mexico Correctional Facility" for Sanctions Pursuant to Fed. R. Civ. P. 11(c) filed September 17, 1998 (doc. 23), and Plaintiff's motion for sanctions contained in his response brief, see Plaintiff's Response to Defendant's Motion for Sanctions filed October 5, 1998 (doc 30), are denied.

DATED this 28th day of January 1999 at Santa Fe, New Mexico.

*Paul Kelly Jr.*
United States Circuit Judge
Sitting by Designation

Counsel:

James Toulouse, Toulouse & Associates, P.A., Albuquerque, New Mexico, and Michael E. Mozes, Law Offices of Michael E. Mozes, P.C., Albuquerque, New Mexico, for Plaintiff.

Robert W. Becker & Stephen G. French, Law Offices of Stephen G. French, Albuquerque, New Mexico, for Defendant.